UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
KEVIN CHESNEY and LORRAINE CHESNEY,

                        Plaintiffs,

              - against -

VALLEY STREAM UNION FREE SCHOOL
DISTRICT NO. 24; VALLEY STREAM UNION
FREE SCHOOL DISTRICT NO. 24 BOARD OF
EDUCATION; JOSEPH CONRAD, President;
CAROLE MEANEY, Vice President;
HENRIETTA CARBONARO, PAUL DePACE,
ANTHONY IADEVAIO, FRANK NUARA,
and LAWRENCE TROGEL; each in his individual
and official capacity; EDWARD M. FALE, Ph.D.,
SUPERINTENDENT OF SCHOOLS, in his
 individual and official capacity; LISA K.
CONTE, PRINCIPAL; CHARLES
BROCEAUR, MAINTENANCE
SUPERVISOR, in his individual and official
capacity; STEPHEN HARAMIS, CUSTODIAN
AND UNION REPRESENTATIVE, in his
individual and official capacity; LOCAL 74
SEIU; "JOHN DOES and JANE DOES A through
D", the latter being persons and/or entities
unknown to complainant, and the NASSAU
COUNTY DIVISION of the CIVIL SERVICE
COMMISSION OF NEW YORK STATE,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM & ORDER**
05 Civ. 5106 (DRH) (ETB)

**APPEARANCES :**

**RUTH M. POLLACK, ESQ.**
Attorney for Plaintiffs
250 Old Country Road, Suite 506
Mineola, NY 11501

**MIRANDA & SOKOLOFF, LLP**
Attorneys for Defendants Valley Stream Union Free School District No. 24; Valley Stream
Union Free School District No. 24 Board of Education; Joseph Conrad; Carole; Henrietta

Carbonaro; Paul DePace; Anthony Iadevaio; Frank Nuara; Lawrence Trogel; Edward M. Fale;
Lisa K. Conte; Charles Broceaur; and Stephen Haramis
240 Mineola Boulevard
Mineola, NY 11501
By: Steven C. Stern, Esq. & Brian Sokoloff, Esq.

**O'DWYER & BERNSTIEN, LLP**
Attorneys for Defendant Local 74
52 Duane Street, 5th Floor
New York, NY 10007
By: Raul Garcia, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Kevin Chesney ("Plaintiff") and Lorraine Chesney brought the present suit

against Valley Stream Union Free School District No. 24; Valley Stream Union Free School

District No. 24 Board of Education; Joseph Conrad; Carole Meaney; Henrietta Carbonaro; Paul

DePace; Anthony Iadevaio; Frank Nuara; Lawrence Trogel; Edward M. Fale; Lisa K. Conte;

Charles Broceaur; Stephen Haramis (hereinafter, collectively, "District Defendants"); Local 74

Service Employee International Union  ("Local 74"); "John Does and Janes Does A through D";

and the Nassau County Civil Service Commission ("N.C.C.S.C.") in the Supreme Court of the

State of New York County of Nassau alleging violations of the Family and Medical Leave Act

("FMLA"), 29 U.S.C. §§ 2601 et seq.; the Consolidated Omnibus Budget Reconciliation Act

("COBRA"), 29 U.S.C. § 1166; the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §

12131 *et seq*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1983 and

1985; the Equal Protection clause of the Fourteenth Amendment; the "Eighth Amendment right

to confront his accusers"; and six state law claims.  District Defendants now move to dismiss the

Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b) (4), (5), and (6).

Defendant Local 74 moves separately to dismiss the Complaint pursuant to Rule 12(c).  Plaintiff

opposes both of the motions. For the reasons set forth herein, the Court GRANTS in part and DENIES in part the District Defendants' motion and GRANTS in full Defendant Local 74's motion.[1]

*BACKGROUND*

The following summary of facts is drawn from the Amended Complaint. Plaintiff resides in Valley Stream, New York, with his wife, Lorraine Chesney. Valley Stream Union Free School District ("District") is a municipal corporation for public education that receives state and federal funding and has its administrative offices in Valley Stream, New York. The District's Board of Education ("Board") was comprised of Joseph Conrad, President; Carole Meaney, Vice President; Henrietta Carbonaro, Paul DePace, Anthony Iadevaio, Frank Nuara, and Lawrence Trogel at the times relevant to the present dispute. Joan DeBell was the Disrict Clerk; Andrea DiFusco was the District Treasurer; and Edward M. Fale, Ph.D., was the Superintendent of Schools for the District; Lisa K. Conte was the Principal of District No. 24. Plaintiff also noted, somewhat curiously, that "the motto of the District was and is 'WE TAKE PRIDE IN OUR SCHOOLS.'" (Am. Compl. ¶ 6.)

Defendant Local 74, with its principle offices in Long Island City, New York, had a collective bargaining agreement with the District. Chesney was a member of Local 74. The N.C.C.S.C., located in Hempstead, New York, was "united in interest with the New York State Civil Service Commission." (*Id.* ¶ 10.) Such is Plaintiff's description of the various defendants in this dispute.

---

[1]N.C.C.S.C. did not move to dismiss the claims against it.

Plaintiff worked for the District from "October 3, 2004, to May 17, 2004,"[2] as an "able-bodied man." (*Id.* ¶ 13.) On March 18, 2004, the Board approved Plaintiff's permanent appointment as a "cleaner" at the Robert W. Carbonaro School, effective April 5, 2004. This approval conferred upon Plaintiff the designation of a "permanent" civil service employee. The appointment was the result of the successful completion of Plaintiff's probationary appointment.

On May 17, 2004, Chesney was "breaking down" the gym, which had been the location of a school event the night before. While he was performing this task, he felt a "pop" in his back, and could "barely get out of bed the following day." (*Id.* ¶¶ 22, 23.) "Nevertheless, plaintiff Chesney traveled to the District and duly filed an accident report in accordance with District policy." (*Id.* ¶ 24.) Plaintiff missed several days of work due to the injury, and "learned he had a herniated disc, which was causally related to the accident of May 17, 2004." (*Id.* ¶ 26.) Plaintiff submitted a Worker's Compensation claim on May 25, 2004, and he did not return to his job "for a period of time." (*Id.* ¶ 29.) At this point, the Amended Complaint is somewhat vague and difficult to follow. It appears that Plaintiff did return to work shortly thereafter, but "[o]n or about June 9, 2004, he left work early and did not return at that time due to his disability." (*Id.* ¶ 31.)

On June 11, 2004, Defendant Haramis, "plaintiff's co-worker and shop steward contacted Superintendent Fale to ascertain whether or not Plaintiff was driving a cab on June 11, 2004." (*Id.* ¶ 49.) The District and Superintendent Fale instructed Defendant Broceau, Supervisor of Maintenance, to "initiate an 'investigation' of Chesney's second job as a taxi driver." (*Id.* ¶ 50.)

---

[2]The date "October 3, 2004" appears to be a typographical error, and should read "October 3, 2003" in order to comport with the other dates in the Amended Complaint.

Upon confirming that Plaintiff was indeed employed and working as a taxi driver, while he was receiving Worker's Compensation benefits, Superintendent Fale held a meeting with a union representative, a co-worker, Principal Conte, and Plaintiff. Superintendent Fale said to Plaintiff:

> You were seen driving a cab at about 6:30 p.m. on June 11; you cannot be employed or receive any income while receiving workers' compensation benefits; that is insurance fraud, working your second job and being out sick while I'm paying for overtime is theft of services. We are terminating you, but if you resign right now, you will leave with a good recommendation, clean record, and I will allow you to pursue your compensation claim.

(*Id.* ¶ 58.) Plaintiff was terminated shortly thereafter.

Without filing an EEOC complaint, an action with any corresponding state agency, or a notice of claim, Plaintiff brought the present lawsuit in New York state court on fourteen causes of action, and seeking $26,000,000.00 for "pain and suffering, inability to obtain critical surgery, and damages as yet undetermined." (*Id.* ¶ 64.) The suit was first filed in the Supreme Court of the State of New York County of Nassau on June 12, 2005. District Defendants subsequently removed the suit to this court on November 1, 2005, on the basis of federal question jurisdiction. Defendant Local 74 submitted an answer on November 4, 2005.

Plaintiff filed that Amended Complaint with this Court on December 8, 2005. District Defendants moved to dismiss the Amended Complaint. Defendant Local 74 moved separately to dismiss the claims against it, but in so doing announced its rejection of the Amended Complaint as untimely, as it was filed without leave after Defendant Local 74 had filed its answer. (*See* Def. Local 74's Reply Mem. at 5-6.) Nonetheless, all Defendants' moving papers address the claims

against it in the Amended Complaint, and the Court addresses the following opinion to the Amended Complaint. Plaintiff opposed both motions.[3]

*STANDARD*

Defendants' motions are brought pursuant to Rule 12(b) (4), (5), and (6) and Rule 12(c). When considering a motion to dismiss for insufficiency of process under Federal Rule of Civil Procedure 12(b)(4) and insufficiency of service of process under Rule 12(b)(5), "a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). "When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *Preston v. New York*, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002); *see also Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376 (S.D.N.Y. 2006).

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *cert. denied*, 513 U.S. 816 (1994). Dismissal under Rule 12(b)(6) is

---

[3]With his opposition to Defendant Local 74's motion, Plaintiff also indicated that he was filing a "cross-motion" "[d]isqualifying O'Dwyer & Bernstein, LLP as counsel for defendant Local 74 SEIU." (Notice of Cross-Mot. to Disqualify.) Plaintiff, however, failed to abide by this Court's Individual Practice Rule 2B that all motions must be preceded by a pre-motion conference letter. Because of this failure, Plaintiff's cross-motion to disqualify is hereby terminated. Plaintiff's may renew the motion consistent with this Court's rules.

appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim entitling him to relief. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003).

To satisfy the notice pleading requirements, a complaint need include only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Such a statement must "'give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson,* 355 U.S. at 47), but it need not plead evidence, *see Swierkiewicz*, 534 U.S. at 510-11. The same standards apply to a motion for judgment on the pleadings under Rule 12(c). *See, e.g., Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

*DISCUSSION*

District Defendants move to dismiss the Amended Complaint in its entirety. It appears that each of the fourteen claims are directed against them. It is much less clear which claims are asserted against Defendant Local 74. Plaintiff even makes the bizarre assertion that "Defendant Union [Local 74] has no legal business appearing in this action against its own member and former client." (Pl.'s Opp'n Mem. to Def. Local 74 at 2.) Of course Plaintiff's argument falls wide of the mark when it was Plaintiff who named Defendant Local 74 as a defendant in the first place. Nevertheless, perusing the Amended Complaint, the causes of action that refer, either specifically or generally, to Defendant Local 74 are the Sixth (Am Compl. ¶ 71), Eighth (*id..* ¶ 76), Tenth (*id.* ¶ 81); Twelfth (*id.* ¶ 87), Thirteenth (*id.* ¶ 90); and Fourteenth Cause of Action (*id.* ¶ 95). The Court's reasoning regarding each of the claims applies to both parties, except where noted.

I.      *The ADA and Title VII*

Plaintiff brought claims pursuant to the ADA and Title VII.  (*See* Am. Compl. ¶¶ 48-52 (Count Five: ADA), 78-79 (Count Nine: Title VII).)  District Defendants move to dismiss these claims on the grounds that Plaintiff failed to obtain a "right-to-sue" letter as required by law. Without citations to any case law, Plaintiff insists that "Defendant is incorrect in its contention that a Title VII or ADA claimant may bring suit in federal court only if he filed a timely complaint with the EEOC and obtained a right to sue letter." (Pl.'s Opp'n Mem. at 9.)

The Second Circuit has consistently held that "exhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply."  *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (citation and internal quotation marks omitted); *see also Bey v. Welsbach Elec. Corp.*, 38 Fed. Appx. 690, 692 (2d Cir. 2002).  "The enforcement provisions of Title VII . . . are applicable to actions brought under the ADA against employers."  *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 476 (N.D.N.Y. 1999); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court.").

In order to bring a Title VII claim or ADA claim, either in federal or state court, a plaintiff must exhaust his administrative remedies and obtain a right to sue letter.  *See Tenney v. Essex County/Horace NYE Home*, No. 05 Civ. 0506 (GLS/DRH), 2006 WL 126766, at *6 (N.D.N.Y. Jan. 17, 2006) (noting that prior to filing a Title VII or ADA suit "a prospective plaintiff must file a discrimination charge naming the allegedly discriminating party with an

authorized state agency or the EEOC and receive a right to sue letter"); *cf. Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 525 (2d Cir. 2001) ("once they exhausted their administrative remedies and received right-to-sue letters, could have brought their Title VII and ADEA claims in state court"). Plaintiff does not assert that he filed a complaint with the EEOC or its state counterpart; he simply insists that he had no such obligation. He is mistaken. As such, the Fifth and Ninth Causes of Action are dismissed.

II.     *Sixth and Eighth Amendments*

Plaintiff brings a claim that "[t]he District and Union violated plaintiff's Eighth Amendment right to confront his accusers." (Am. Compl. ¶ 95 (Count Fourteen).) Defendant Local 74 point out that Plaintiff either means the Eighth Amendment prohibition on governmental infliction of cruel and unusual punishment, or the Sixth Amendment right to confront one's accusers. (*See* Def. Local 74's Mem. at 5.) District Defendants then contend that, whichever Amendment Plaintiff intended to cite, the claim must fail as those Amendments only apply to criminal prosecutions.

Plaintiff's argument in opposition borders on incoherence: "Defendant's Eighth Amendment Claim should read 'Sixth' Amendment. It is axiomatic that failure to comply with FIOA can deprive a citizen of constitutional rights if the documentation relates to the claims made by the citizen." (Pl.'s Opp'n Mem. to Local 74 at 14.) Surely, Plaintiff intended to write "*Plaintiff*'s Eighth Amendment Claim." The Court is left to further assume that, though it had not been previously mentioned in any submissions, Plaintiff intended to refer to the "Freedom of Information Act," abbreviated "FOIA," when it wrote "FIOA." Of course, FOIA is a statute requiring government disclosure of records that pertain to private citizens. *See National Council*

*of La Raza v. Department of Justice*, 411 F.3d 350, 355-56 (2d Cir. 2005) (noting that FOIA requires the government to disclose records that it maintains about private citizens unless its documents fall within specific, enumerated exemptions); *see also* 5 U.S.C. § 552. It is unclear how FOIA is pertinent to the present suit, and Plaintiff provides no explanation.

Setting these problems aside, the claim fails because the Sixth and Eighth Amendments only apply to criminal prosecutions. *See Erbacci, Cerone, and Moriarty, Ltd. v. United States*, 939 F. Supp. 1045, 1056 (S.D.N.Y. 1996) ("In relevant part, the Sixth Amendment to the United States Constitution states: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' The protections afforded by this Amendment are 'specifically limited to "criminal prosecutions." ' ") (quoting *Hannah v. Larche*, 363 U.S. 420, 440 n.16 (1960)); *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262-63 (1989) (holding that the Eighth Amendment only applies to criminal prosecutions). Accordingly, the Court dismisses the Fourteenth Cause of Action.

III.    *FMLA*

Plaintiff also asserts violations of the FMLA, alleging that District Defendants "failed to duly notify Chesney of his rights." (*See* Am. Compl. ¶ 41 (Count Two).) District Defendants move to dismiss the claim on the grounds that Plaintiff is not an "eligible employee." (Def. District's Mem. at 4.) Perusing Plaintiff's loosely structured opposition memorandum, the Court was unable to identify Plaintiff's argument in opposition to the dismissal of the FMLA claim.

Pursuant to the FMLA, an "eligible employee" is an employee who has been employed "(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the

previous 12-month period." 29 U.S.C. § 2612.  According to the terms of the Amended

Complaint, Plaintiff was hired by District Defendants on October 3, 2003 (*see* Am. Compl. ¶ 13),

and his employment was terminated around June 30, 2004.[4]  Thus, according to the Amended

Complaint, Plaintiff worked for the District a total of nine months.  Nine months falls three

months short of the FMLA requirement for "eligible employees."  Accordingly, Plaintiff cannot

succeed on a FMLA claim, and the Second Cause of Action is dismissed.

IV.    *COBRA*

        The Third Cause of Action cites a violation of COBRA by the District Defendants.  (*See*

Am. Compl. ¶¶ 44-47.)  Plaintiff alleges that "Defendant District and Board failed to provide

Chesney with COBRA materials in contravention of its obligations under state and federal law."

(*Id.* ¶ 46.)  District Defendants move to dismiss the COBRA claim on the grounds that Plaintiff

did receive the required information.  Plaintiff provides no argument in opposition.

        Under COBRA, in the event of a covered employee's termination, "an employer must

notify the administrator of the group health care plan within thirty days; the administrator then

has fourteen days to notify the qualified beneficiary of her right to continue coverage, and this

period may be longer if the plan is a multiemployer group health care plan and it so provides."

*Hubicki v. Amtrak Nat'l Passenger R.R. Co.*, 808 F. Supp. 192, 196 (E.D.N.Y. 1992).  "An

_____

        [4]The Amended Complaint indicates that Plaintiff was told that he was being fired by
Superintendent Fale on June 11, 2004 (Am. Compl. ¶ 58), and that on July 8, 2004, Plaintiff filed
suit for wrongful termination (*id.* ¶¶ 62, 64).  The Amended Complaint does not, however, state
the specific date of termination.  Plaintiff's Opposition Memorandum does, however, state that
the date of termination as June 30, 2004.  (*See* Pl.'s Opp'n Mem. at 4.)  For the purposes of the
above argument, the exact date is not required.

employer or plan administrator who sends proper notice to the covered employee's last known address is deemed to be in good faith compliance with COBRA's notification requirements." *Id.*

On this point, District Defendants submitted copies of letters that indicate that Plaintiff had been apprised of his COBRA rights. (*See* Def. District's Mem. at 5.) One such letter is from Plaintiff, dated July 19, 2004, wherein Plaintiff stated, "I would request that the District continue my medical insurance coverage. In the alternative, if you chose not to do so I would seek eligibility for coverage under [COBRA]." (Def. District's Notice of Mot., Ex. J.; *see also* Fale Aff. ) As District Defendants are moving to dismiss the complaint, however, materials outside of the pleadings cannot be taken into account. Therefore, District Defendants' motion to dismiss the Third Cause of Action is denied without prejudice to renew under Rule 56 of the Federal Rules of Civil Procedure.

## V. *Equal Protection*

Plaintiff then moves to dismiss the Tenth Cause of Action which alleges that "Defendants and each of them violated plaintiff's rights under the Equal Protection Clauses of the . . . United States Constitution." (Am. Compl. ¶ 81.) District Defendants move to dismiss this claim on the grounds that Plaintiff has failed to allege that he was treated differently than some similarly-situated individuals.

The requirement in the Fourteenth Amendment that no State shall "deny to any person within its jurisdiction the equal protection of the laws" means that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In addition to showing "selective adverse treatment of individuals compared with other similarly situated individuals," *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005), a plaintiff in

establishing an equal protection claim must show that the "selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.* (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). "[A] successful equal protection claim may be 'brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff has failed to allege that he was treated differently than any similarly-situated individuals; he has entirely failed to even mention similarly-situated individuals. Accordingly, Plaintiff has failed to allege any facts that could form the basis of an Equal Protection claim and, therefore, his Equal Protection claim must fail.

*VI.    Section 1983*

As the Thirteenth Cause of Action, Plaintiff brings a claim of "discrimination" pursuant to § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *See* § 1983; *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

The fatal flaw in Plaintiff's claim is that § 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). Thus, "[t]he first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged." *Id.* at 140. In the Thirteenth Cause of Action, Plaintiff has failed to allege any constitutional violation or deprivation of a federal right. He simply alleges that District Defendants deprived him of his "civil rights" and "benefits as conferred upon him by contract." (Am. Compl. ¶ 90.) These vague terms do not indicate, with even minimal precision, what federal rights were at stake.

Plaintiff counters that *Swierkiwicz* requires "only a simple statement of a claim sufficient to give defendant notice of the nature and grounds upon which a claim is brought." (Pl.'s Opp'n Mem. at 11.) Plaintiff refers to the low pleading standard by suggesting that a Title VII claim should stand even when the complaint stated only, "I was turned down for a job because of my race." (Pl.'s Opp'n Mem. at 17 (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). But Plaintiff's pleading even fails that minimal standard.

Plaintiff stretches *Swierkiwicz* too far. Despite its low threshold, *Swierkiwicz* still requires that the pleading "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiwicz*, 534 U.S. at 512. Here, the Amended Complaint fails to provide District Defendants with any notice regarding the grounds upon which the claim rests. The claim merely cites a federal statute that provides for no substantive rights, § 1983, and alleges a series of "injuries" that do not necessarily implicate any specific federal right or a federal statute that was violated by District Defendants' conduct.

-14-

As a result, District Defendants have no notice of the grounds upon which the claim rests. Accordingly, even under *Swierkiwicz*, the Thirteenth Cause of Action is dismissed. *See Rhodes v. Alexander Central School Dist.*, No. 05 Civ. 431S, 2006 WL 232722, at *2 (W.D.N.Y. Jan. 30, 2006) (dismissing a § 1983 claim pursuant to Swierkiwicz because "nowhere in the Complaint is there a reference to or identification of any federal statutes or constitutional provisions").

VII.     *Section 1985*

In his Seventh Cause of Action, Plaintiff asserts that "defendants Dr. Fale, Haramis, Broudeau and/or District and/or Board acted in concert or in combination to defraud and/or cause injury to plaintiff in order to injure him in his reputation and/or his property . . . ." (Am. Compl. ¶ 73.) District Defendants move to dismiss the conspiracy claim on the grounds that Plaintiff's pleading is vague and conclusory.

To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Id.* (internal quotation marks omitted). Significantly, the conspiracy must be motivated by "'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)).

Here, Plaintiff has failed to allege any "class-based, invidious discriminatory animus." There is nothing in the Amended Complaint to suggest that Plaintiff was a member of any relevant "class." Accordingly, he has failed to adequately plead a § 1985 violation and the Seventh Cause of Action is dismissed. *See, e.g.*, *Palmieri v. Lynch*, 392 F.3d 73, 86-7 (2d Cir. 2004) (upholding district court's dismissal of § 1985 "as [plaintiff] never contended that a class-based animus existed").

## VII.    *State Law Claims*

Finally, District Defendants and Defendant Local 74 move to dismiss all of the state law claims, but on distinct grounds. (*See* Def. District's Mem. at 9; Def. Local 74's Reply Mem. at 6-10.)

### A.    *District Defendants' Motion*

District Defendants move to dismiss on the grounds that Plaintiff failed to file a notice of claim. Plaintiff makes a number of counter arguments, including the contention that District Defendants were constructively on notice and that "Defendant does not cite to any 'substantial prejudice' or inability to investigate due to the purported absence of a formal 'notice of claim' in maintaining its defense on the merits." (Pl.'s Opp'n Mem. at 10.)

As a condition precedent to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, N.Y. Gen. Mun. L. §§ 50-i and 50-e require plaintiffs (1) to file a notice-of-claim within ninety days after the claim arises, and (2) to file a complaint within one year and ninety days after the claim arises. These requirements apply to tort claims brought against school districts. *See* N.Y. Educ. L. § 3813. Where a plaintiff seeks the vindication of private rights regarding claims of employment discrimination under New York

Executive Law § 296, the notice of claim provisions also apply. *See Cavanaugh v. Bd. of Educ. of Huntington Union Free Sch. Dist.*, 296 A.D.2d 369, 369 (2d Dep't 2002) ("Where, as here, a plaintiff seeks private relief for employment discrimination in violation of the Executive Law, the timely filing of a notice of claim is a condition precedent to suit.")

A plaintiff must serve the notice of claim within ninety days after the claim arises. *See* N.Y. Gen. Mun. L. § 50-e(1)(a). In addition, the notice must specify (1) the name and address of each claimant and his or her attorney; (2) the nature of the claim; (3) the time and the place of the incident; and (4) the injuries or damages claimed. *See id.* § 50-e(2). Notice of claim requirements are generally strictly construed, and failure to comply with the requirements typically results in dismissal due to failure to state a cause of action. *Hardy v. New York City Health and Hosp. Corp*., 164 F.3d 789, 793-94 (2d. Cir. 1999).

The Amended Complaint fails to allege that Plaintiff served a notice of claim with District Defendants. Furthermore, Plaintiff's Opposition Memorandum does not contend that Plaintiff ever served the notice.[5] Therefore, Plaintiff's claims for failure to accommodate (First Cause of Action); disability discrimination (Fourth Cause of Action); breach of contract (Sixth Cause of Action); wrongful termination (Eighth Cause of Action); unfair dismissal (Eleventh

_____

[5]Plaintiff's contention that District Defendants should have known of the claim and have not been prejudiced by the failure to comply with the notice-of-claim provisions are inapposite. Plaintiff insists that the motion to dismiss should be denied because District Defendants were not prejudiced by Plaintiff's failure. Parenthetically, this argument presumably would be germane to an application for leave to serve a late notice of claim. *See* Gen. Mun. L. 50-e(5); *see also Igneri v. New York City Bd. of Educ*., 756 N.Y.S.2d 783, 784 (2d Dep't 2003) ("In determining whether or not to grant an application for leave to serve a late notice of claim, a court must consider, inter alia, whether the municipality acquired actual knowledge of the facts constituting the claim within 90 days after it arose or within a reasonable time thereafter, whether the delay would substantially prejudice the municipality in maintaining its defense on the merits, and whether or not the plaintiff demonstrated a reasonable excuse for the delay.").

Cause of Action); and libel and slander (Twelfth Cause of Action) against District Defendants must be dismissed.

### B.    *Defendant Local 74's Motion*

Defendant Local 74 moves to dismiss on the grounds that Plaintiff has failed to state a claim. The state law claims that implicate Defendant Local 74 are the Sixth, Eighth, and Twelfth.

### 1.    *Breach of Contract*

The Sixth Cause of Action, headed "Breach of Contract,"asserts that Defendant Local 74 "breached its fiduciary duty to plaintiff by acting in concert with Dr. Fale, Jane Doe and John Does A-D to discriminate against plaintiff to terminate him and his benefits." (Am. Compl. ¶ 71.) Plaintiff has not alleged that he entered into any contract with Defendant Local 74. It appears, instead, that Plaintiff's complaint is that Defendant Local 74 failed to abide by the provisions of the collective bargaining agreement in implementing the grievance procedure. (*See* Pl.'s Opp'n Mem. to Def. Local 74 at 14.) Defendant Local 74, thus, construes this claim as a claim for "breach of duty of fair representation." (*See* Def. Local 74's Mem. at 7.) Plaintiff does not dispute Defendant Local 74's interpretation of the claim.

Plaintiff's duty of fair representation claim is barred by the statute of limitations. Under New York law, any action against an employee organization that "has breached its duty of fair representation regarding someone to whom such employee organization has a duty shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, . . . whichever is later." N.Y. C.P.L.R. § 217(2)(a). The meeting where Plaintiff was terminated, wherein this cause of action accrued, occurred on

June 14, 2004.  Thus, in order to comply with § 217(2)(a), Plaintiff was obligated to commence

his suit against Defendant Local 74 on or before October 14, 2004.  He filed suit in the New

York State Supreme Court for Nassau County on June 14, 2005, eight months too late.  As a

result, the "breach of contract" claim against Defendant Local 74 is dismissed.

### 2. *Wrongful Termination*

The Eighth Cause of Action, complaining of "wrongful termination," alleges that

"Defendants, and each of them" violated "Nassau County Human Rights Law, which prohibits

discrimination on the basis of disability, actual or perceived, in employment."  (Am. Compl. ¶

76.)  This is apparently a reference to the Nassau County Administrative Code § 21-9.8.

*Available at*

http://www.nassaucountyny.gov/website/GenericServices/docs/NassauCountyAdCode_July-11-2

005.pdf#search=%22%22nassau%20county%20administrative%20code%22.  Section 21-9.9,

entitled "enforcement," dictates that "[i]t shall be the duty of the Nassau County Commission on

human rights to receive and investigate complaints and to initiate its own investigations of

violations of this title . . . ."  Thus, it does not create a legally cognizable cause of action in this

court.  As a result, the Eighth Cause of Action is dismissed.

### 3. *Libel and Slander*

The Twelfth Cause of Action claims that "[t]he actions of defendants, and each of them,

constituted libel and slander against plaintiff . . . ."  (Am. Compl. ¶ 87.)  Defendant Local 74

moves to dismiss the libel and slander claim on the grounds that Plaintiff has not alleged that it

made any statements that were injurious in any way.  (*See* Def. Local 74's Reply Mem. at 9.)

Plaintiff's counterargument appears to be, not that Local 74 made any injurious statement, but that it's "acquiescence" was sufficient. (Pl.'s Opp'n Mem. to Def. Local 74 at 13.)

"Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute a defamation per se.'" *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)). Defamation may take the form of a published written expression (including pictures), *i.e.*, libel, or a published oral expression, *i.e.*, slander. *Croton Watch Co., Inc. v. National Jeweler Magazine, Inc.*, No. 06 CV 662(GBD), 2006 WL 2254818, at *3 (S.D.N.Y. Aug. 7, 2006). A defendant cannot be held liable for defamation where it did not make or publish the statement at issue. *See, Khan v. New York Times Co., Inc.*, 710 N.Y.S.2d 41, 46 (1st Dep't 2000) ("It is axiomatic that a defendant cannot be held liable for a libelous statement that it did not write or publish.").

Plaintiff has failed to allege that Defendant Local 74 made any libelous or slanderous statement. Plaintiff has similarly failed to allege that any such statement was made to a third-party. In essence, Plaintiff is alleging that Defendant Local 74 committed slander by not speaking out and disagreeing with any allegedly slanderous statements that were made. Plaintiff has failed to identify any provision under defamation law for finding liability on that basis. As a result, Plaintiff has failed to state a claim of slander or libel against Defendant Local 74.

## CONCLUSION

In sum, the Court grants District Defendants' motion to dismiss the state law claims for failure to serve a notice of claim, and grants the motion to dismiss the federal claims on various

grounds.   The lone surviving claim against District Defendants is Plaintiff's COBRA claim.  As

for Defendant Local 74, all of the claims asserted against it are dismissed.

**SO ORDERED.**

Dated: Central Islip, N.Y.                                    /s/_____
      September 22, 2006                            Denis R. Hurley
                                              United States Senior District Judge