```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
KEVIN CHESNEY and LORRAINE CHESNEY,

                Plaintiffs,
                                                    **MEMORANDUM** & **ORDER**
        - against -                                 05 Civ. 5106 (DRH) (ETB)

VALLEY STREAM UNION FREE SCHOOL
DISTRICT NO. 24; VALLEY STREAM UNION
FREE SCHOOL DISTRICT NO. 24 BOARD OF
EDUCATION; JOSEPH CONRAD, President;
CAROLE MEANEY, Vice President;
HENRIETTA CARBONARO, PAUL DePACE,
ANTHONY IADEVAIO, FRANK NUARA,
and LAWRENCE TROGEL; each in his individual
and official capacity; EDWARD M. FALE, Ph.D.,
SUPERINTENDENT OF SCHOOLS, in his
 individual and official capacity; LISA K.
CONTE, PRINCIPAL; CHARLES
BROCEAUR, MAINTENANCE
SUPERVISOR, in his individual and official
capacity; STEPHEN HARAMIS, CUSTODIAN
AND UNION REPRESENTATIVE, in his
individual and official capacity; LOCAL 74
SEIU; "JOHN DOES and JANE DOES A through
D", the latter being persons and/or entities
unknown to complainant, and the NASSAU
COUNTY DIVISION of the CIVIL SERVICE
COMMISSION OF NEW YORK STATE,

                Defendants.
-----------------------------------X
```

**APPEARANCES:**

**Ruth M. Pollack, Esq.**[1]
Attorney for Plaintiffs
21 West Second Street
P. O. Box 120
Riverhead, New York 11901

---

[1] Ms. Pollack was counsel of record for Plaintiffs at the time the instant motion was briefed and submitted. Currently, Plaintiffs are proceeding pro se.

**Sokoloff Stern LLP**
Attorneys for Defendants Valley Stream Union Free Sch. Dist. No. 24, Valley Stream Union Free School Dist. No. 24 Board of Education, Joseph Conrad, Carole Meaney, Henrieta Carbonaro, Paul Depace, Anthony Iadevaio, Frank Nuara, Lawrence Trogel, Edward M. Fale, Lisa K. Conte, Charles Broceaur and Stephen Haramis
355 Post Avenue, Suite 201
Westbury, New York 11590
By:     Steven C. Stern, Esq.

**Lamb & Barnosky, LLP**
Attorneys for Defendants Valley Stream Union Free Sch. Dist. No. 24, Valley Stream Union Free School Dist. No. 24 Board of Education, Joseph Conrad, Carole Meaney, Henrieta Carbonaro, Paul Depace, Anthony Iadevaio, Frank Nuara, Lawrence Trogel, Edward M. Fale, Lisa K. Conte, Charles Broceaur and Stephen Haramis
534 Broadhollow Road, Suite 210
P.O. Box 9034
Melville, New York 11747
By:     Michelle S. Feldman, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Kevin Chesney ("Plaintiff" or "Chesney") and Lorraine Chesney[2] brought the present suit against Valley Stream Union Free School District No. 24 (the "District"); Valley Stream Union Free School District No. 24 Board of Education; Joseph Conrad; Carole Meaney; Henrietta Carbonaro; Paul DePace; Anthony Iadevaio; Frank Nuara; Lawrence Trogel; Edward M. Fale ("Fale"); Lisa K. Conte; Charles Broceaur; Stephen Haramis (hereinafter, collectively, "District Defendants"); Local 74 Service Employee International Union ("Local 74"); "John Does and Janes Does A through D"; and the Nassau County Civil Service Commission (the "Commission") in the Supreme Court of the State of New York County of Nassau alleging

---

[2]Although named as a plaintiff, Lorraine Chesney, Plaintiff's wife, asserted no claims and sought no relief in either the original or amended complaint. She is not named as a plaintiff in the Proposed Second Amended Complaint.

violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq.; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1166; the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12131 *et seq*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1983 and 1985; the Equal Protection clause of the Fourteenth Amendment; the "Eighth Amendment right to confront his accusers"; and six state law claims. The action was removed to this Court in November 2005.

Currently before the Court is Plaintiff's motion for leave to file his Second Amended Complaint (the "SAC"). For the reasons set forth below, the motion is denied.

**Factual and Procedural Background**

Subsequent to the removal of the action from state court, the District Defendants moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(4), (5), and (6). Defendant Local 74 moved separately to dismiss the Amended Complaint pursuant to Rule 12(c).

By Memorandum and Order dated September 22, 2006, the Court (1) dismissed all claims against Defendant Local 74 and (2) granted the District Defendants' motion to dismiss the claims against them with the exception of Plaintiff's COBRA claim.

Thereafter, the Commission moved to dismiss the Amended Complaint as to the claims asserted against it. By Memorandum and Order dated April 30, 2007, the Commission's motion was granted.

As a result of the two decisions set forth above, the lone surviving claim was Plaintiff's COBRA claim against District Defendants.

On October 29, 2006, Plaintiff moved for an extension of time until November 8, 2006 to move for reconsideration of the Court's September 22, 2006 decision. The application was granted. No motion for reconsideration was filed. Rather, on November 12, 2006, Plaintiff's counsel filed an "affirmation of actual engagement." In that affirmation, counsel stated she would be on trial and therefore unavailable to move to amend the complaint, move for reconsideration of the September 22, 2006 decision, or to proceed with discovery in this case "until further notice" and requested that "all activity" in this case be temporarily stayed pending counsel's availability. On November 13, 2006, the Court denied a further extension of time to move for reconsideration and denied the request for a stay of these proceedings.

By application dated February 13, 2008, Plaintiff sought permission to file a motion for leave to serve his proposed Second Amended Complaint. The Court addressed that application in an Order dated April 2, 2008 ( the "2008 Order"). In its 2008 Order, the Court noted that, in fact, the application sought two forms of relief, to wit (1) reconsideration of the September 22, 2006 Memorandum and Order, and (2) leave to amend the complaint to add three new causes of action. The Court denied the motion for reconsideration as untimely and because Plaintiff could not meet the strict standard for reconsideration. The Court granted leave to move to serve the Proposed Amended Second Complaint to assert three new causes of action[3] for (1) "fraud and record tampering;" (2) violations of the "ADA of 1990 and its New York counterpart;" and (3) violations of Section 504 of the Rehabilitation Act of 1973, as amended, and set a briefing schedule therefor.

---

[3] In support of the application seeking leave to make the motion, Plaintiff attached a proposed SAC; the three "new" causes of action that the Court granted leave to move for were the fourteenth, fifteenth and sixteenth causes of action.

Pursuant to the briefing schedule, as amended, on August 4, 2008, (1) Defendants' papers in opposition to the motion to file the Second Amended Complaint and (2) Plaintiff's reply papers in further support of the motion to amend were filed. Which is to say, the moving papers served by the Plaintiff were not filed on August 4, 2008. When the Court discovered the error, it directed that the moving papers be filed.[4]

The Court notes that absent from the moving papers (as filed on March 31, 2009, and supplemented on April 1, 2009,) is any captioned document entitled "Second Amended Complaint" or the like. Rather, included is a document commencing with numbered page 7 and continuing to page 18 that appears to be the proposed pleading. Indeed, Defendants' opposing papers, filed August 4, 2008, note the receipt of only the document with pages 7 through 18 and the absence of any captioned document purporting to be the proposed second amended complaint. In apparent recognition of the omission, Plaintiff's reply papers as filed on August 4, 2008, include a complete document with caption, entitled "Second Amended Verified Complaint." The document entitled "Second Amended Verified Complaint" includes the causes of action dismissed by the Court's Memorandums and Orders. In referencing the SAC, the Court shall be referring to the "Second Amended Verified Complaint" attached to Plaintiff's reply papers, although the Court's discussion shall be limited to the three causes of action referenced in the Court's April 2, 2008 Order, to wit the fourteenth ("fraud and work record tampering'),

---

[4] At the time of the Court's direction, Plaintiff was proceeding pro se and therefore the Court directed by ECF Order that the moving papers be filed by Defendants. By letter dated April 1, 2009, Plaintiff informed the Court that the papers filed by Defendants were incomplete and provided copies of the documents omitted. (See Docket No. 123.) The Court in rendering this decision has considered the materials submitted with Plaintiff's April 1, 2009 letter.

fifteenth (violations of the ADA and its New York counterpart), and sixteenth causes of action (violation of Section 504 of the Rehabilitation Act).

The facts as alleged in the SAC, which are accepted as true for purposes of this motion, that relate to the proposed new claims are as follows:

Chesney began employment with the District as a "Cleaner" on October 3, 2003. (SAC ¶¶ 12, 13, 15.) He attained permanent civil service status effective April 5, 2004. (*Id.* ¶¶ 13-14.) On May 17, 2004, after cleaning the vast majority of the school on his own, Plaintiff began to "break down" the gym, which he had set up the night before for a Parent Teachers Association event, and get it ready for the annual school budget vote. (*Id.* ¶¶ 18-19.) "[W]hile performing his duties he felt a 'pop' in his back, which turned out to be a herniation with serious sequilae;" nevertheless, he continued to work until he completed his duties for the day. (*Id.* ¶ 21.) The next day he "could barely get out of bed" but went to the District to fill out an accident report. He "missed several days of work due to the injury and doctors' appointments." (*Id.* ¶ 24.) On or about May 25, 2004, he submitted a workers' compensation claim. (*Id.* ¶ 26.)[5] "Due to the extent of his injury, Chesney could not continue to return to his job for a period of time. Chesney

---

[5] With respect to the workers' compensation claim, the SAC alleges "After a series of hearings and appeals by the District Defendants, The Workers [sic] Compensation Board found against the District and in favor of Chesney in that on June 27, 2005 and July 25, 2005 the Board in WCB Case No. 2040 4577 determined that Chesney sustained his injury to his leg and back on 5-17-04 on District time and that he had at least a partial disability, and that he made no material representations as to his lawful taxicab while he was out of sick leave time." (*Id.* ¶ 31.) "Plaintiff's counsel served a letter notice of his claim and intent to sue the District on Fale [the District's superintendent of Schools] by certified mail within 85 days of his termination." (*Id.* ¶ 32.)

notified his superiors of the reason he could not come to work at this time. On or about June 9, 2004, he left work early and did not return at that time due to his disability." (*Id.* ¶¶ 28-30.)

On or about June 11, 2004, Defendant Steven Haramis contacted Superintendent Fale claiming Plaintiff was driving a cab. Fale then ordered an investigation of Plaintiff's second job as a taxi driver, which Plaintiff claims "was a legal second job under Worker's Compensation Law." (SAC ¶¶ 51-52.) District personnel sent a letter to the taxi company threatening legal action if it did not provide the District with all information about Plaintiff's employment. (*Id.* ¶ 55.)

On June 14, 2004, Plaintiff was advised to attend an emergency meeting with the Superintendent that afternoon. At the meeting, Superintendent Fale stated "You were seen driving a cab at about 6:30 p.m. on June 11; you cannot be employed or receive any income while receiving workers' compensation benefits; that is insurance fraud, working your second job and being out sick while I'm paying for overtime is theft of services. We are terminating you, but if you resign right now, you will leave with a good recommendation, clean record, and I will allow you [to] pursue your compensation claim." (*Id.* ¶ 60.) Presumably, Chesney declined the offer. Defendant Board voted to terminate Chesney based on the recommendation of Superintendent Fale. (*Id.*)

Chesney claims he was "terminated unlawfully in part because he was known and/or perceived to be disabled. . . . In contrast to Chesney, Haramis, a similarly situated employee custodial worker, received leave time from Fale for an alleged injury just before he retired to take another job." (*Id.* ¶¶ 64-65.)

Plaintiff alleges that the District Defendants and Local 74 "tampered with the official District hourly work records of [P]laintiff in an effort to create the false impression that he had leave time available when in fact, he did not." (*Id.* ¶ 111.) "The records were tampered with and altered by the unlawful insertion of language and verbiage over the signature of Chesney without his knowledge or consent. . . . This tampering was done to defraud plaintiff, the taxpaying public, this court, the State of New York and the Federal government." (*Id.* ¶¶ 112-13.) "District defendants . . . made misrepresentations to the public in Board Meetings, public meetings, and engaged in violations of their fiduciary duties to plaintiff, in the malicious abuse of process, abuse of power, negligent infliction of emotional distress, negligent hiring, training and retention of certain employees who acted with the Superintendent, and finally by its failure and refusal to provide information to plaintiff in violation of the Freedom of Information Law, Public Officer's Law Sec. 84, et seq. after he duly requested such information." (*Id.* ¶ 115.)

Plaintiff also alleges that "Defendants violated the ADA of 1990 and its New York counterpart by discriminating against plaintiff when he advised them of his on the job injury. Defendants also violated the ADA by retaliating against plaintiff when he opposed Defendants' unlawful employment practices against him." (*Id.* ¶¶ 118-19.)

Finally, Plaintiff alleges that "Defendants . . . violated Section 504 of the Rehabilitation Act of 1973 in that [they] discriminated against plaintiff while receiving financial assistance as a state, public education institution." (*Id.* ¶ 122.)

**Discussion**

## I. Legal Standard for a Motion to Amend

Federal Rule of Civil Procedure ("Rule") 15(a) provides, in pertinent part, that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend may properly be denied on the grounds of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the proposed amendment. *See Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Although the decision whether to allow a party to amend its complaint is left to the sound discretion of the district court, there must be good reason to deny the motion. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995); *see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979).

"One appropriate basis for evaluating the productivity of a proposed amendment lies in the relative futility of accepting the proposed amended complaint." *Wilson v. Toussie*, 260 F. Supp. 2d 530, 535 (E.D.N.Y. 2003); *accord Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999). If the proposed amendment would not survive a motion to dismiss, then it is appropriately denied as futile. *Wilson v. Toussie*, 260 F. Supp. 2d at 535 (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

The Supreme Court recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41

(1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted*, 128 S. Ct. 2931 (June 16, 2008). In other words, *Twombly* "'require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974)). Although *Twombly* did not make clear whether the plausibility standard applies beyond the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007). As always, the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *Id.* at 98.

**II. The Parties' Positions**

Defendants oppose Plaintiff's motion to amend his complaint. First, they maintain the motion is untimely, having been filed after the court ordered deadline for amending pleadings, and prejudicial to them as discovery, which has concluded, would have to be reopened. Second, they argue that the amendments are futile; more specifically, they point to
(1) the failure to file a timely complaint with the EEOC, a prerequisite to filing an ADA claim;
(2) the failure to meet the threshold requirements to assert any claim under the ADA or the Rehabilitation Act; and (3) the failure to file a notice of claim as required by New York law, a prerequisite to the assertion of Plaintiff's state law claims.

In response, Plaintiff argues that under the Federal Rules of Civil Procedure amended pleadings may be filed anytime up until the time of trial. With respect to the claim under the ADA, Plaintiff does not maintain that he did in fact file a complaint with the EEOC but rather that the Second Circuit has carved out "an exception where claims are sufficiently related to the allegation in the charge that it would be unfair to civil rights plaintiffs to bar such claims in civil actions. . . . This condition is met when the conduct in a civil complaint would fall within the scope of the investigation that would reasonably grow out of the EEOC charge of discrimination. . . . My case is all about disability and related claims and nothing I have pled to date would fall outside the scope of any EEOC investigation." (Pl.'s Reply Aff. at ¶¶ 6-7.) With respect the Defendants' notice of claim argument, Plaintiff maintains that such "notice of claim is not required where fraud, which has a six year statute of limitations, in on the part of the District itself. Upon discovering the fraud in this case in the documents filed by Defendants, I immediately filed an affidavit putting them on notice of the fraud. Thus, [the] docket reflects

that 'notice' of the fraud and tampering was filed once discovered. . . . The District never states how it is prejudiced by any lack of a formal notice of claim." (*Id.* ¶ 10.)

**III. The Proposed Amendment is Untimely and Would Prejudice the Defendants**

In this case, Plaintiff's delay of more than two years in seeking to amend[6] would significantly delay the resolution of this case and therefore it would be an appropriate exercise of this Court's discretion to deny the motion. *See Zahra v. Town of Southold*, 48 F.3d 674, 685-86 (2d Cir. 1995). Further, it is apparent that, with respect to the ADA and Rehabilitation Act claims, Plaintiff knew or should have known of the facts upon which the amendment is based and no excuse is offered for the delay. *See Walker v. Caban*, 2008 WL 4925204, * 13 (S.D.N.Y. Nov. 19, 2008), Report and Recommendation Adopted, 2008 WL 5148794 (S.D.N.Y. Dec. 5, 2008). Turning then to the fraud and record tampering claim, it appears to be premised upon the District's alleged falsification of Plaintiff's time sheets.[7] According to the reply affidavit of Plaintiff, he first learned of the alleged tampering when Defendants "annexed to its papers before this Court's first decision, a) a time sheet I was not paid for to date, and b) a time sheet that was not completed [by] me in my handwriting and clearly tampered with by someone at the District."

---

[6] The Court has calculated the delay as running from the commencement of the action until February 2008 when Plaintiff sought leave to file his motion to amend.

[7] The claim for fraud and record tampering also asserts that "District defendants . . . made misrepresentations to the public in Board Meetings, public meetings, and engaged in violations of their fiduciary duties to plaintiff, in the malicious abuse of process, abuse of power, negligent infliction of emotional distress, negligent hiring, training and retention of certain employees who acted with the Superintendent, and finally by its failure and refusal to provide information to plaintiff in violation of the Freedom of Information Law, Public Officer's Law Sec. 84, et seq. after he duly requested such information." (*Id.* ¶ 115.) The Court notes that near identical allegations were made in the original complaint. *See* Compl. ¶ 63.

(Pl.'s Reply Aff. in Supp. of Motion to Amend ¶ 2.) Given that the Court's first decision in this matter was September 22, 2006, Plaintiff should have known of the alleged fraud/tampering at least by that date. But Plaintiff's unexcused delay is not the only factor that supports denial of leave to amend.

If the claims were allowed, Defendants would have to bear greater litigation costs because of the need to conduct discovery on these claims and the need for discovery would result in a delay of the resolution of the case as discovery was certified as complete as of October 16, 2007,[8] four months before Plaintiff commenced the process for moving to amend the complaint. *See Classicberry Ltd. v. Musicmaker.Com, Inc.*, 48 Fed. Appx. 360, 362 (2d Cir. 2002) (summary order); *see also Krumme v. Westpoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) ("'One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action.'") (quoting *H.L Hayden Co. v. Siemens Med. Sys.*, 112 F.R.D. 417, 419 (S.D.N.Y. 1986)); *Bartel v. Renard*, 1998 WL 784027, *3 (2d Cir. 1998) ("A proposed amendment is especially prejudicial when discovery has already been completed.").

Moreover, the Scheduling Order entered in this case required that motions to amend pleadings were to be served and filed no later than April 16, 2007. ( Docket No. 75.) Plaintiff did not file its pre-motion conference letter for the proposed motion to amend until February 18, 2008, ten months past the Court-ordered deadline. As the motion to amend was not made until after the Court-imposed cut-off date for such amendments, the "higher 'good cause' standard of Fed. R. Civ. P. 16(b) applies to [plaintiff's] motion to amend." *Classicberry*, 48 Fed. Appx. at

---

[8] Order of Magistrate Judge E. Thomas Boyle, dated November 2, 2007 (Docket No. 86).

362 (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)); *see also Abram v. City of Buffalo*, 2008 WL 5191675, * 7-8 (W.D.N.Y. 2008). Given that the facts underlying the new claims "were . . . known" to Plaintiff prior to the deadline for amendment of pleadings and "no justification for the delay is presented, there is plainly no showing of 'good cause' . . . ." *Id.*

When Plaintiff's delay is coupled with failure to comply with the scheduling order deadline for the amendment of pleadings, the prejudice resulting from the fact that leave to amend was sought after the close of discovery and that allowance of the amendment would delay the final disposition of this action, the sound exercise of the Court's discretion warrants denial of the motion.

## IV. The Proposed Amendments are Futile

The proposed amendment is also subject to denial on the grounds of futility. As set forth in detail below, the proposed causes of action would not survive a motion to dismiss and therefore the amendment is appropriately denied as futile. *See Wilson v. Toussie*, 260 F. Supp. 2d at 535.

### A. The ADA Claims

In order to bring an employment related ADA claim, including one alleging retaliation, a plaintiff must exhaust his administrative remedies and obtain a right to sue letter. *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007).[9] Plaintiff does not assert that he filed a complaint with the EEOC or its state counterpart; he simply insists that he had no such

---

[9] Indeed, in its September 22, 2006 Memorandum & Order, this Court dismissed Plaintiff's fifth cause of action, which also alleged a violation of the ADA, for failure to exhaust administrative remedies.

obligation because the Second Circuit has carved out "an exception where claims are sufficiently related to the allegation in the charge that it would be unfair to civil rights plaintiffs to bar such claims in civil actions. . . . This condition is met when the conduct in a civil complaint would fall within the scope of the investigation that would reasonably grow out of the EEOC charge of discrimination. . . . My case is all about disability and related claims and nothing I have pled to date would fall outside the scope of any EEOC investigation." (Pl.'s Reply Aff. at ¶¶ 6-7 (citing, inter alia, *Wallace v. Seacrest Linen*, 2006 WL 2192777 (S.D.N.Y. Aug. 2, 2006), *Stewart v. U.S. Immig. & Naturalization Serv.*, 762 F.2d 193 (2d Cir. 1985).) The referenced exception, however, only applies when an EEOC complaint has been filed as to one or more but not all of a plaintiff's claims. If the omitted claim is "reasonably related to" a charge filed with the EEOC, the exhaustion requirement will be met. *See, e.g., Stewart*, 762 F.2d at 198 (noting that "district courts may assume jurisdiction over a claim 'reasonably related' to a charge filed with the EEOC" but finding that the claim at issue was not reasonably related). Here, there is no indication that Plaintiff filed any charge against any of the District Defendants and therefore no "reasonably related" determination can be made.

Because Plaintiff has failed to plead he exhausted his administrative remedies with the EEOC, the proposed ADA claims would be subject to dismissal on a motion to dismiss and thus leave to amend to assert them is appropriately denied as futile.

### B. The Rehabilitation Act Claim

Section 504 of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance

. . . ." 29 U.S.C. § 794(a). The standards used to determine whether § 504 has been violated in an action alleging employment discrimination are those applied under the ADA. *Id.* § 794(d); *see also Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995).[10]

A claim for violation of § 504[11] requires a plaintiff to demonstrate that "(1) he is a 'qualified individual' with a disability; (2) the defendants are subject to the ADA; . . .(3) that the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs or activities, or was otherwise discriminated against by defendants by reason of plaintiff's disabilities . . . [and (4)] that the defendants receive federal funding." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

The proposed Rehabilitation Act claim is deficient because Plaintiff does not allege sufficient facts to support that he is a qualified individual with a disability. An individual with a "disability" is defined as any person who (1) has a physical or mental impairment that

---

[10] The Court notes that the ADA was recently amended to substantially change the evaluation of ADA claims. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). The ADA Amendments Act expressly provides that its provisions shall not take effect until January 1, 2009. When a case implicates a federal statute enacted after the events in suit, that statue will not be construed to have retroactive effect absent clear congressional intent. *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). Given the 2008 Act's express effective date, there is no clear congressional intent to have it apply retroactively. Accordingly, the Court shall not apply the 2008 Amendments retroactively to the conduct at issue which preceded the 2008 Act's effective date. *Accord, EEOC v. Agro Distr. LLC,* 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008); *Budde v. Kane County Forest Preserve*, 2009 WL 736646, at *4 n.4 (N.D. Ill. Mar. 19, 2009); *Amorosi v. Molino*, 2009 WL 737338, at *4 n.7 (E.D. Pa. Mar, 19, 2009); *Czapinski v. Iron City Indus. Cleaning Corp.*, 2009 WL 614808, at *2 n.2 (W.D. Pa. Mar. 5, 2009); *Geoghan v. Long Island R.R.*, 2009 WL 982451, *9 (E.D.N.Y. Apr. 9, 2009).

[11] The first three of the enumerated requirement also apply to a claim under the ADA. *See Mele v. Hill Health Center*, 2009 WL 859081 *5 (D. Conn. Mar. 31, 2009); *see also Stone v. City of Mount Vernon*, 118 F.3d 92, 96 (2d Cir. 1997).

"substantially limits" one or more "major life activities"; (2) has a "record of such impairment"; or (3) is "regarded as" having such an impairment. 42 U.S.C. § 12102(2).

The SAC does not identify what, if any, major life activity was substantially limited by Plaintiff's impairment,"a herniation with serious sequilae." (SAC ¶ 21.) ) While working constitutes a major life activity, "the inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working." *Temple v. Bd. of Educ.*, 322 F. Supp. 2d 277, 281 (E.D.N.Y. 2004). Rather for the major life activity of working to be impaired, one must be "disabled from a 'broad range of jobs' as compared with the 'average person having comparable training, skills and abilities.'" *Doe v. Bd. of Ed.,* 63 Fed. Appx. 46, 49 (2d Cir. 2003) (summary order)(quoting *Bartlett v. N.Y. State. Bd. of Law Exam'rs*, 226 F.3d 69, 82-83 (2d Cir. 2000)); *see Giordano v. City of New York*, 274 F.3d 740 (2d Cir.2001). Here, the SAC cannot be read to claim that Plaintiff was substantially impaired in the life activity of working as both the SAC and the June 27, 2005 New York State Worker's Compensation Board Memorandum annexed to the SAC refer to Plaintiff working as a taxi driver both at the time of his injury and his termination, as well as for a period of time thereafter. (SAC ¶ 31.)

Even assuming that Plaintiff has alleged sufficient facts to support that he is an individual with a disability, he has not alleged any facts suggesting that his discharge was due to his disability. To the contrary, he asserts that he was terminated because he was accused of driving a cab while receiving workers' compensation benefits, which the District claimed was "insurance fraud" and "theft of services." (SAC ¶ 60; *see also* Pl.'s Reply Aff. ¶ 12 ("I was unlawfully terminated for a legal concurrent job permitted under WCL.").) *Cf. Mele v. Hill Health Center*, 2009 WL 859081 *5 (D. Conn. Mar. 31, 2009) (dismissing ADA and Rehabilitation Act claims

because complaint did not allege facts showing that plaintiff was discriminated against because of disability).

The proposed pleading fails to state a claim for violation of § 504 of the Rehabilitation Act and therefore leave to amend to assert the claim is appropriately denied as futile.

### C. The State Law Claim

As noted earlier, Defendants argue that Plaintiff cannot assert claims under state law for "fraud and record tampering" and the "New York Counterpart of the ADA" because he never filed a notice of claim. The Court, however, need not reach the issue as there is no longer any independent basis for federal jurisdiction in the within action given the Court's Memorandum & Order, dated March 31, 2009, granting Defendants summary judgment on Plaintiff's COBRA claim. Accordingly, it would be inappropriate for the Court to permit the amendment to assert a state claim, the resolution of which would require the determination of additional factual and legal issues. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) ( holding that dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where the resolution of the state law claims entails resolving additional legal and factual issues).

### Conclusion

For the reasons set forth herein, Plaintiff's motion for leave to file the second amended complaint is denied. The Clerk of Court shall close this case on or after May 15, 2009 (the date

on which the Court's March 31, 2009 Order granting summary judgment on the COBRA claim becomes effective).

**SO ORDERED.**

Dated: Central Islip, N.Y.  /s/
May 14, 2009  Denis R. Hurley
United States Senior District Judge